UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
Trustees of the Local 813 Pension Trust Fund,   :
                                                                :      REPORT AND
                                      Plaintiffs,   :      RECOMMENDATION
                                                        :
                 -against-                 :      1:22-CV-05683 (FB) (PK)
                                                        :
Argento Rubbish Removal, Inc.,   :
                                                        :
                                     Defendant.   :
----------------------------------------------------------x

**Peggy Kuo, United States Magistrate Judge:**

       Trustees of the Local 813 Pension Trust Fund ("Plaintiffs") brought this action against Argento Rubbish Removal, Inc., XYZ Corporations 1-10, and John and Jane Does 1-10 for violations under the Employee Retirement Income Security Act of 1941 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (*See* "Compl.", Dkt. 1.) Plaintiffs have moved for default judgment against Defendant Argento Rubbish Removal, Inc. ("Defendant") seeking withdrawal liability, interest, and liquidated damages. ("Motion," Dkt. 10.)

       The Honorable Frederic Block referred the Motion to the undersigned for a report and recommendation. For the reasons stated herein, I respectfully recommend that the Motion be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

       The following facts are taken from the Complaint (Dkt. 1), the Declaration of Neil V. Shah ("Shah Decl.," Dkt. 10-1), the exhibits attached to it, and the Supplemental Declaration of Neil V. Shah ("Shah Suppl. Decl.," Dkt. 13), and are accepted as true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor).

       The Local 813 Pension Trust Fund (the "Fund") is an employee benefit plan, and a multi-employer plan, and Plaintiffs are the Trustees of the Fund. (Compl. ¶¶ 8-9; Shah Decl. ¶ 5). Defendant

entered into a Collective Bargaining Agreement with Local Union 813, International Brotherhood of Teamsters (the "Union"). (Compl. ¶ 13; Shah Decl. ¶ 7; *see* "CBA," Ex. 1 to the Shah Decl., Dkt. 10-2.)

Pursuant to the CBA, Defendant was required to remit contributions to the Fund on behalf of employees who performed covered work. (Compl. ¶ 14; Shah Decl. ¶ 7; CBA ¶¶ 17-21.) The Fund is operated pursuant to a Fund Trust Agreement. (*See* "FTA," Ex. 2 to the Shah Decl., Dkt. 10-3.) Under the terms of the FTA, Defendant was required to remit contributions to the Fund on behalf of employees who performed covered work, and when an employer fails to timely pay its contributions, it is liable to the Fund for an additional 1.5% per month in interest and 20% in liquidated damages. (Shah Decl. ¶ 7; FTA § 9.6; *see* CBA § 23.)

On May 27, 2022, Plaintiffs notified Defendant that, as of Defendant's last day of operations, April 29, 2022, it ceased to have an obligation to the Fund. (Shah Decl. ¶ 8; *see* "May 27 Letter" at 1-2, Ex. 3 to the Shah Decl., Dkt. 10-4.) This cessation of Defendant's obligation constituted a "complete withdrawal" from the Fund, which subjected it to payment of withdrawal liability. (Compl. ¶ 15; Shah Decl. ¶ 8.) Plaintiffs' actuary determined that Defendant's withdrawal liability was $1,233,673.00, and calculated that Defendant was required to pay monthly installments of $1,254.00 for 240 months, noting that the maximum length of time permitted by ERISA is 20 years. (May 27 Letter at 1.) The initial payment was due by July 27, 2022. (*Id.* at 2; Shah Decl. ¶ 9.)

On June 2, 2022, Plaintiffs informed Defendant that its "permanent cessation of operations and sale of all or substantially all of its assets" constituted a "substantial risk that [Defendant] will be unable to pay its withdrawal liability," and, therefore, Plaintiffs exercised their right to accelerate the withdrawal liability and demanded full payment of $300,960.00 by June 9, 2022. (*See* June 2, 2022 Letter from Plaintiffs to Defendant ("June 2 Letter") at 1 (all references to ECF pagination), Ex. 4 to

2

the Shah Decl., Dkt. 10-5; Shah Decl. ¶ 10.) Defendant did not make any payments. (Shah Decl. ¶ 11.)

Plaintiffs filed the Complaint on September 22, 2022, attaching both the May 27 and June 2 Letters. (Dkt. 1; Exs. A and B to the Compl.) On September 23, 2022, Plaintiffs effectuated service on Defendant by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State. (Dkt. 5.) Defendant did not timely answer or otherwise respond to the complaint, and Plaintiffs requested a certificate of default on October 18, 2022. (Dkt. 6.) The Clerk's Office entered default against Defendant on October 21, 2022. (Dkt. 7.)

On November 22, 2022, Plaintiffs voluntarily dismissed Defendants John and Jane Does 1-10 and XYZ Corporations 1-10 from the case. (Notice of Voluntary Dismissal, Dkt. 9; Electronic Order dated Nov. 22, 2022.)

Plaintiffs filed the Motion on November 22, 2022. (Dkt. 10.) On December 21, 2022, the Court ordered Defendant to show cause in writing by January 20, 2023 "why the relief requested in plaintiffs' motion papers… should not be granted" and warned that "failure to file a timely response will likely result in a judgment being entered against [Defendant]." (Order to Show Cause at 2, Dkt. 11.) Plaintiffs mailed a copy of the Order to Show Cause to Defendant. (Certificate of Service, Dkt. 12.) Defendant did not file any response.

On July 17, 2023, Plaintiffs submitted the Supplemental Declaration of Neil Shah, setting forth the calculations for the requested accrued interest on the withdrawal liability and the daily rate for pre-judgment interest. (Dkt. 13.)

**DISCUSSION**

**I.      Default Judgment Standard**

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of

3

Court enters the defendant's default. Fed. R. Civ. P. 55(a). If a plaintiff's request is for a judgment in a sum certain, the plaintiff may request that the Clerk of Court enter judgment for the amount requested pursuant to Fed. R. Civ. P. 55(b)(1). Plaintiffs requested that the Clerk enter default judgment in a sum certain. (*See* Shah Decl. ¶¶ 19-23.) Because the Motion has been referred to me for a report and recommendation, however, I consider the Motion an application to the Court under Fed. R. Civ. P. 55(b)(2).

"[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). The plaintiff must take several steps before the court will grant default judgment. The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations omitted). The plaintiff must establish compliance with the procedural requirements of Local Civ. Rules 7.1 and 55.2.

On a defendant's default, the court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020

4

WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established…." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II. Jurisdiction

### A. *Subject Matter Jurisdiction*

Plaintiffs allege violations of ERISA, 29 U.S.C. §§ 1001 *et seq.* Thus, the Court has original jurisdiction over Plaintiffs' ERISA claim pursuant to 28 U.S.C. § 1331, as well as Sections 502(e)-(f) and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e)-(f), 1451(c).

### B. *Service on the Defendants*

Plaintiffs properly served Defendant by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State. *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B). (Dkt. 5, Dkt. 10-6.) Service on Defendant was, therefore, proper.

### C. *Personal Jurisdiction*

"Serving a summons … establishes personal jurisdiction over a defendant … who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A).) New York State has general jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018). Because Defendant is a New York corporation, the Court has personal jurisdiction over Defendant.

## III. Procedural Compliance with Local Civil Rules 7.1 and 55.2

Local Civil Rule 7.1(a) requires parties making a motion to the Court to include a Notice of Motion, a Memorandum of Law, and, if necessary, supporting affidavits and exhibits. Local Civil Rule 55.2(b) requires that an application for default judgment be accompanied by "(1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment." Local Civil Rule 55.2(c) requires proof of mailing of the entire application for default judgment to the defaulting party.

Plaintiffs provided a Notice of Motion (Dkt. 10), supporting affidavits and exhibits (Shah Decl., Dkt. 10-1; CBA, Dkt. 10-2; FTA, Dkt. 10-3; May 27 Letter, Dkt. 10-4; June 2 Letter, Dkt. 10-5), a copy of the Clerk's Certificate of Default (Dkt. 10-8), a copy of the Complaint (Dkt. 10-6), and proof of mailing of the Motion and accompanying papers to Defendant (Certificate of Service, Dkt. 10-10).

Although Plaintiffs did not submit a Memorandum of Law in compliance with Local Rule 7.1(a)(2), "the Second Circuit has made it clear that the court has broad discretion to excuse noncompliance with Local Rules." *Gustavia Home, LLC v. Vaz*, 17-CV-5307 (ILG) (RER), 2019 WL 3752772, at *4 (E.D.N.Y. Aug. 8, 2019), *aff'd*, 2020 WL 5868286 (2d Cir. Oct. 2, 2020); *see also Ass'n for Retarded Citizens of Connecticut, Inc. v. Thorne*, 68 F.3d 547, 554 (2d Cir. 1995) ("The district court's inherent discretion to depart from the letter of the Local Rules extends to every Local Rule regardless of whether a particular Local Rule specifically grants the judge the power to deviate from the Rule.")

Because the Shah Declaration contains case law and legal analysis that would normally be provided in a Memorandum of Law, Plaintiffs' non-compliance is excused.

**IV.   Liability**

ERISA enables participants and beneficiaries of an "employee benefit plan" or a "multiemployer plan" to seek relief for violations, or to enforce provisions, of such a plan. *See* Sections 502(a) and 4301(a) of ERISA, 29 U.S.C. §§ 1132(a), 1451(a). ERISA defines a qualifying "employee

benefit plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." Section 3(3) of ERISA, 29 U.S.C. § 1002(3). A qualifying "multiemployer plan" is defined as a plan "(i) to which more than one employer is required to contribute," and "(ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer." Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The Fund qualifies as both an "employee benefit plan" and a "multiemployer plan." (Compl. ¶ 8; Shah Decl. ¶ 5.)

Pursuant to Section 4201(a) of ERISA, 29 U.S.C. § 1381(a), "If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." *See ILGWU Nat. Ret. Fund v. Levy Bros. Frocks*, 846 F.2d 879, 881 (2d Cir. 1988) ("The purpose of withdrawal liability 'is to relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers.'" (quoting H.R. Rep. No. 96-869, pt. 1, at 67 (1980))). By ceasing business operations as of April 29, 2022, Defendant ceased to have an obligation to contribute to the Fund, effecting complete withdrawal from the Fund under Section 4203(a) of ERISA, 29 U.S.C. § 1383(a), and triggering withdrawal liability under Section 4201(a) of ERISA, 29 U.S.C. § 1381(a). (Compl. ¶¶ 15-16; Shah Decl. ¶ 8.)

Plan sponsors are obligated to take specific action in the event of an employer withdrawal:

> 1. As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall—
>     (A) notify the employer of—
>         (i) the amount of the liability, and
>         (ii) the schedule for liability payments, and
>     (B) demand payment in accordance with the schedule.

Section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1). If any event defined by the rules governing the plan "which indicates a substantial likelihood that an employer will be unable to pay its withdrawal

7

liability" occur, the employer is deemed in default and the plan sponsor may accelerate the withdrawal liability. Section 4219(c)(5)(B) of ERISA, 29 U.S.C. § 1399(c)(5)(B).

ERISA permits an employer, within 90 days after receiving withdrawal liability notice under Section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1), to request a review of the plan sponsor's determination of withdrawal liability and schedule of payments, identify any inaccuracy in the withdrawal liability determination, or furnish any additional relevant information to the plan sponsor. Section 4219(b)(2)(A) of ERISA, 29 U.S.C. § 1399(b)(2)(A).

ERISA also requires that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." Section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1). If the employer does not challenge the withdrawal liability determination under Section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1), any arbitration must be initiated within 180 days of the plan sponsor's withdrawal liability demand. *See id.*

On May 27, 2022, Plaintiffs sent Defendant a letter which stated the amount of its withdrawal liability and demanded payment pursuant to a stated schedule, with the initial payment due by July 27, 2022. (Shah Decl. ¶ 9; May 22 Letter at 1-2.) On June 2, 2022, Plaintiffs sent Defendant a letter informing it of Plaintiffs' determination that there was a substantial likelihood that Defendant would be unable to pay its withdrawal liability and, thus, demanded immediate payment. (Shah Decl. ¶ 10; June 2 Letter at 1.)

Defendant has not made any payment, initiated arbitration, or challenged Plaintiffs' determinations of Defendant's withdrawal liability. (Compl. ¶ 18; Shah Decl. ¶ 11.)

Accordingly, I respectfully recommend a finding that Defendant is liable to Plaintiffs for unpaid withdrawal liability.

**V.     Requested Relief**

Plaintiffs request that Defendant be ordered to pay $300,960.00 in withdrawal liability, $16,552.80 in accrued interest, and $60,192.00 in liquidated damages. (Proposed Judgment, Dkt. 10-9.)

Generally, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. Although a court may conduct a hearing to determine damages, Fed. R. Civ. P. 55(b)(2), on a motion for default judgment, "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc.*, 2020 WL 5519200, at *3.

"[W]here, as here, the damages sought consist, in part, of delinquent withdrawal liability payments and where the employer has otherwise failed to timely request arbitration, courts have the discretion to 'adopt[] the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated.'" *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 613-14 (E.D.N.Y. 2017) (quoting *Labarbera v. United Crane & Rigging Servs., Inc.*, No. 08-CV-3274 (DLI)(ALC), 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011)) (collecting cases).

**A.     *Accelerated Withdrawal Liability***

Plaintiffs determined that Defendant's withdrawal liability was $300,960.00 using the "fund's method of computing withdrawal liability" and attached their calculations. (Compl. ¶¶ 16-17; Shah Decl. ¶ 9; May 27 Letter at 1; Estimate of Withdrawal Liability, Ex. A to the May 27 Letter, Dkt. 10-4 at 6-9 (ECF pagination).) Because the amount requested is comprised of delinquent withdrawal liability payments, the Court may adopt Plaintiffs' calculation without further inquiry.

Nevertheless, Plaintiffs attached the actuary's report and underlying calculations to the May 27 Letter, showing the basis for their determination that the monthly payment is $1,254.00. (*See* Ex. A to Compl. at ECF page 7, Dkt. 1-1.) When multiplied by the maximum period of 240 months permitted by Section 4219 of ERISA, 29 U.S.C. § 1399, the total withdrawal liability payment amount is $300,960.00. I have reviewed the report and calculations and find that Plaintiffs have sufficiently established the withdrawal liability amount they have demanded. *See Div. 1181 Amalgamated Transit Union*, 270 F. Supp. 3d at 614-15 (reviewing plaintiff's actuarial report and concluding that the principal amount of outstanding withdrawal liability was sufficient established).

Accordingly, I respectfully recommend that Plaintiffs be awarded **$300,960.00** in withdrawal liability.

### B. *Interest Accrued*

Interest on defaulted withdrawal liability is calculated from the date the payment was due. 29 C.F.R. § 4219.32(a)(1). Plaintiffs seek interest accrued from June 2, 2022, the date they demanded immediate payment of $300,960.00 in accelerated withdrawal liability, until September 22, 2022, the day this action was commenced, a period of three months and 20 days. (Supplemental Shah Decl. ¶ 6.)

Pursuant to the FTA, the applicable rate of interest is 1.5% per month for delinquent contributions. (Supplemental Shah Decl. ¶ 7; FTA § 9.6(b).)

Plaintiffs calculated that the 1.5% rate per month equates to 0.05% per day. (*Id.* ¶ 7.) Multiplying the total withdrawal liability of $300,960.00 by 1.5% for three months and by 0.05% per day for 20 days, the total interest owed between June 2, 2022 and September 22, 2022 is $16,552.80.

In the Complaint, Plaintiffs had sought additional interest from September 22, 2022 through the date of judgment (Compl. ¶ 30), but they do not renew this request in the Motion. Thus, I do not recommend any award of prejudgment interest.

10

I respectfully recommend that Plaintiffs be awarded **$16,552.80** in accrued interest.

### C.   *Liquidated Damages*

Pursuant to the FTA, Plaintiffs are entitled to liquidated damages in the amount of twenty percent of the **total withdrawal liability of $300,960.00**. (FTA § 9.6(c)(2).)

I respectfully recommend that Plaintiffs be awarded **$60,192.00** in liquidated damages.

### **CONCLUSION**

Based on the foregoing, I respectfully recommend that the Motion for Default Judgment be granted and that Plaintiffs be awarded the following damages:

- $300,960.00 in accelerated withdrawal liability
- $16,552.80 in interest
- $60,192.00 in liquidated damages

This results in a total award of **$377,674.80** in damages.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         August 21, 2023

11